# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

GREGORY FOREMAN,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )                CV620-026
                                    )
                                    )
TIMOTHY C. WARD, *et al.*,          )
            Defendants.             )

## ORDER and REPORT AND RECOMMENDATION

Plaintiff filed this 42 U.S.C. § 1983 lawsuit while housed at Smith State Prison (SSP). *See* doc. 1 at 2. He is proceeding *pro se* and *in forma pauperis*.[1] Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect potential defendants. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (per curiam); *Al-Amin v. Donald*, 165 F. App'x 733, 736 (11th Cir. 2006) (per curiam); 28 U.S.C. § 1915A. A pro se litigant's pleadings are held to a more lenient standard than those drafted by an attorney, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but

---

[1] Plaintiff alleged that staff at Smith declined to provide him an inmate account statement. *See* doc. 7. Plaintiff complied with this Court's order that he certify in writing that he presented the form to the appropriate prison official, but the official declined to fill out the form. *See* doc. 11. Thus, although his account status is unknown, Plaintiff has met his burden in proceeding IFP.

the Court may dismiss the Complaint or any portion thereof if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## BACKGROUND

Before turning to the factual allegations in Plaintiff's Complaint, the Court must first comment on the Complaint's provenance.  According to a declaration submitted by Plaintiff's fellow inmate Darnell Nolley, Nolley drafted the Complaint.  *See* doc. 2.  Nolley attests that he is currently confined in Tier II alongside Plaintiff, and that he drafted the Complaint on Plaintiff's behalf at his request because Plaintiff has "an extremely limited knowledge of the law."  *Id.* at 2.  Nolley notified the Court that the Plaintiff signed his own Complaint and based upon letters the Court has received from Plaintiff, it does appear that Plaintiff's handwriting is substantially different from that of Nolley and yet similar to signatures submitted by Plaintiff.  *See e.g.*, docs. 7, 11.  The Court does not herein rule on the propriety of Nolley's "ghostwriting," but notes that the present instance does not preclude frivolity review.  *Senatus v. Lopez*, 2021 WL 5310591, at *3 (S.D. Fla. Aug. 19, 2021) ("Plaintiff exercised his

right to access the courts by consulting with templates, 'his fellow peers' and other resources available from inside the jail to replead his claims properly.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).   The Court now turns to the facts asserted in Plaintiff's Complaint.   Plaintiff complains about procedural defaults for prisoner placement in the Tier II program within SSP, the procedural blocks which prevent prisoners from graduating from Tier II, and the conditions of confinement within the Tier II program generally.   Doc. 1 at 6-14.

Plaintiff first describes his placement in Tier II.   He explains he was previously housed in the C-1 housing unit at Telfair State Prison, where a fight broke out between two different gangs, and although he did not choose to participate in the fight, he was assaulted during the incident.   Doc. 1 at 4.   He was hospitalized for two days.   *Id.*   Upon his return from the hospital, Plaintiff was placed in segregation.   *Id.*   On June 21, 2019, Plaintiff was transferred from Telfair to SSP.   *Id.*   When he arrived, Plaintiff was placed in a Tier II Program housing unit and was deprived of his personal property.   *Id.*   On July 5, 2019, Plaintiff was temporarily transferred to Augusta State Medical Prison for the purpose of receiving physical therapy for the injuries he sustained during the

fight at Telfair.  *Id.*  He was placed in segregation at Augusta, but after approximately two months, he was released from segregation and assigned to general population.  *Id.* at 5.

On November 13, 2019, Plaintiff was transferred back to SSP and was again placed in Tier II.  When he asked Defendant Godfrey, the Tier II Program Unit Manager, why he had been assigned to the Tier II program, Godfrey replied "you know what you did at Telfair."  *Id.* Godfrey provided Plaintiff with a document Plaintiff describes as an "Administrative Segregation: Tier II Program Assignment Appeal Form," which indicated that the reason Plaintiff had been placed in Tier II was his involvement in "a major disruptive event," specifically a "major disturbance or directing the assault of another offender DR #808587."  *Id.* Plaintiff filed an appeal to his placement in Tier II with Defendant Nelson,[2] noting that he did not meet the Tier II Program policy's eligibility criteria for assignment to the Tier II program.  *Id.* at 7. Plaintiff submitted a witness statement from the prisoner he was accused

---

[2] Defendant Adrian Nelson is identified by Plaintiff as the "designee of Defendant Doe," and further identifies Defendant Doe as "the Southeastern Director of Facilities Operations."  Doc. 1 at 3.  Plaintiff alleges Nelson is "in charge of deciding Tier II Program assignment appeals by way of authority designated him by Defendant Doe." *Id.*

of assaulting "explaining that Plaintiff did not assault him." *Id.* As of the date of filing the present suit, Plaintiff has not received a response to his appeal. *Id.*

Next Plaintiff describes the conditions of his confinement. He is in phase one of the program, which is described by him as the lowest and most restrictive phase of a three-phase program. *Id.* at 7. He complains that even though the Tier II program policy requires a minimum of five hours per week of exercise outside cell, he has never been offered out-of-cell exercise. *Id.* at 8. Moreover, the out-of-cell exercise space is described by Plaintiff as a "sixteen-foot cage enclosed by high, concrete walls covered with a metal grate." *Id.* While general population prisoners receive approximately 110 hours of out-of-cell recreation and social interaction, including two to six hours of outside recreation every day, Plaintiff spends most of his time alone, which causes him to suffer sporadic episodes of migraines, heartburn, stomach cramps, stiffness in his joints, constipation, apathy, lethargy and depression, as well as severe neck and back pain. *Id.* at 8.

Plaintiff complains that he is only allowed one two-hour non-contact visit per month, while general population inmates are permitted

a minimum of eight six-hour contact visits per month.  Doc. 1 at 8.  Unlike general population prisoners, who receive visits on the weekend, Tier II program situated prisoners are required to pre-schedule their visits between Monday and Thursday, and only in the mornings.  *Id.* at 9. Plaintiff is also permitted only one 15-minute phone call per month, while general population prisoners may use facility phones whenever they are outside their cells.  *Id.*  Aside from stationery items, Plaintiff is deprived of personal property, commissary items, hygiene items, and most mail and religious literature.  *Id.*  He is unable to visit the legal library, attend group religious worship services, access educational and vocational opportunities, and he is deprived of access to televisions, radios, electronic communication devices, or any other information dissemination medium.  *Id.*  He is unable to sanitize his "already decrepit cell" and it is not otherwise cleaned, resulting in an infestation of "mostly rats, mosquitoes, spiders, and large cockroaches." *Id.* at 12.  He is served smaller portions of food than the general population, and food that is served is inadequate; milk is often sour, and fruit is rotten.  *Id.* at 13. Plaintiff has been double celled with another Tier II inmate since January 9, 2020.  *Id.*

Plaintiff next complains that his Tier II confinement is indefinite because of procedural bars limiting his completion of the required program. Doc. 1 at 13-14. He claims that inmates in Tier II are not eligible for release until they have completed three "phases" of the Tier II program. *Id.* at 7. According to Plaintiff, in order to graduate from any of the three phases of Tier II, the inmate must complete and submit behavior modification program packets. *Id.* One to two program packets may be completed within any two-week period, and thus, the duration of a prisoner's confinement in the Tier II program is dependent upon the number of packets the inmate is assigned. *Id.* Plaintiff also alleges that staff may, without a prisoner's knowledge, make comments about a prisoner's perceived attitude by writing notes on a clipboard which is mounted outside of prisoners' cells. *Id.* at 13. According to Plaintiff, these comments become part of the prisoner's institutional file and may be relied upon to justify adverse actions against the prisoner "long after the comments are recorded, leaving the prisoner without a meaningful opportunity to rebut or respond to them." *Id.* at 13-14.

The crux of Plaintiff's Complaint is that he was placed in Tier II without due process, and that Tier II conditions pose an undue hardship

in relation to the conditions existing in general population, in violation of the Fourteenth Amendment.  Doc. 1 at 14-15.  He asserts that although the policy mandates that "placement in the . . . program  is the result of a classification committee decision that is approved by the warden," he never received an adjudication or a disciplinary hearing imposing the sanction of isolation in excess of thirty days prior to his assignment to the Tier II program.  *Id.* at 11 (citing Tier II Program SOP).  Plaintiff argues that the placement is especially unfair because, generally, "[w]hen a Tier II Program situated prisoner is transferred to another maximum security level prison, he is automatically placed in the Tier II Program housing unit to which he is transferred, even if the reason posited by the prison authorities as the basis for his initial assignment to the Tier II Program at the prison from which he is transferred no longer subsists at the prison to which he is transferred." *Id.* at 12.  He also alleges that the program conditions constitute deliberate indifference to his right to be free from the unnecessary and wanton infliction of pain in violation of the Eighth Amendment.  *Id.*  at 14.  He seeks a declaration that these acts violate the Constitution, a preliminary and permanent injunction ordering Defendant Ward to release him from segregation and

place him in the general population, compensatory damages, punitive damages, nominal damages, and costs. *Id.* at 17.

## LEGAL STANDARD

The Court will review Plaintiff's claim pursuant to 28 U.S.C. § 1915A to determine whether he has stated a colorable claim for relief under 42 U.S.C. § 1983. A complaint or any portion thereof may be dismissed if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

## DISCUSSION

Plaintiff names eight Defendants in this action. Doc. 1 at 2-3. He alleges that Defendants Godfrey, Johnson, and Cardenas violated his

Fourteenth and Eighth Amendment rights by arbitrarily assigning him to the Tier II program without an initial administrative segregation placement hearing. *Id.* at 14, 15. He alleges that Defendants Doe and Nelson failed to respond to his appeal and otherwise upheld the segregation decision in violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 15. Plaintiff alleges that Godfrey assigned him to Tier II based on misconduct for which Plaintiff had already been punished, and that it constituted gratuitous punishment in violation of the Eight Amendment. *Id.* He asserts that Defendant Adams approved the actions of other officials in violation of the Fourteenth and Eight Amendments. *Id.* at 14. Against Defendant Ward, Plaintiff makes a failure to train allegation, and he alleges that Defendant Dozier unconstitutionally authorized the Tier II policies, which he argues operate to deprive prisoners of their liberty in violation of the Fourteenth Amendment. *Id.* at 15.

## A. Fourteenth Amendment Claims Against Godfrey, Johnson, Cardenas, Doe, and Nelson

The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally

protected interest "'in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  Generally, "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation . . . or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time."[3]  *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam).  Thus, to state a due process claim, a prisoner must allege more than just confinement in segregation without due process.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The prisoner must also show that the nature of his confinement (i.e., the conditions or duration) gives rise to a protected liberty interest and otherwise entitles him to some measure of due process.  *See id*. at 486-87.

---

[3]While Plaintiff insists that Tier II segregation is punitive in nature rather than administrative, *see* doc. 1 at 10,  the assumption that he is being punished is not a foregone conclusion.  The statewide tier program typically segregates individuals for various reasons. *See e.g., Daker v. Allen*, 2020 WL 1486868, at *1 (S.D. Ga. Mar. 3, 2020).

The Court notes that the allegations contained in Plaintiff's Complaint closely resemble those asserted in *Quintanilla v. Bryson*, both in verbiage and in substance.  730 F. App'x 738 (11th Cir. 2018).  As here, Quintanilla was placed in segregation after a fight broke out, even though Quintanilla was not involved in the fight.  *Id.* at 741.  He was not served with a disciplinary report.  *Id.*  He was then transferred to SSP, where he was immediately placed in Tier II.  *Id.*  He never received a hearing and did not receive information regarding the reasons for his placement in Tier II at SSP until ten days later, when he was given an assignment memo and appeal form.  However, while Quintanilla's appeal was curtly denied with the explanation that he had "met criteria for Tier II," Plaintiff did not receive a response to his appeal at all.

Moreover, the conditions of Tier II appear to be the same in both complaints—like Plaintiff, Quintanilla alleged that he spent almost all of his time in a stripped, isolated cell with no place to read or write, limited if any access to out-of-cell exercise or visitation from family, limited if any access to healthy food, and a "decrepit" cell without "adequate arrangements" made to sanitize it. *Quintanilla*, 730 F. App'x at 740-41; Doc. 1 at 12.  Like Plaintiff, Quintanilla suffered from "migraines,

heartburn, stomach cramps, severe neck and back pain, stiffness in his joints, constipation, lethargy, and depression." *Id.* at 740; doc. 1 at 8 (complaining of "sporadic episodes of migraines, heartburn, stomach cramps, stiffness in his joints, constipation, apathy, lethargy and depression, as well as constant and severe neck and back pain."). Quintanilla also alleged that his cell had an "excessive insect and rodent infestation" including "rats, mosquitoes, and spiders." *Id.* at 741; doc. 1 at 12 (alleging the same). Ultimately, Quintanilla alleged similar Eighth and Fourteenth Amendment allegations, and the Eleventh Circuit found that Quintanilla had stated claims warranting service, reversing this Court's *sua sponte* dismissal. *Id.* at 749. Bearing this relevant precedent in mind, the Court evaluates Plaintiff's due process claims.

### i.   *Initial Placement in Tier II*

The Court construes Plaintiff's claims regarding his initial placement in the Tier II program  as procedural due process claims rather than substantive due process claims.[4]  To allege a procedural due process

_____

[4] Plaintiff repeatedly references Defendants' actions as "arbitrary." *See e.g.*, doc. 1 at 14 (alleging that Defendant Godfrey "arbitrarily assigned" him to Tier II.). Substantive due process broadly "protects against the arbitrary and oppressive exercise of government power." *Waldman v. Conway*, 871 F.3d 1283, 1292–93 (11th Cir. 2017). However, given the Eighth Amendment's "explicit textual source of constitutional protection" against confinement without penological justification,

claim Plaintiff must establish: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Plaintiff appears to sufficiently allege the existence of a liberty interest which should have been protected by procedural due process, because he presents the same facts regarding the conditions of Tier II that were found, for screening purposes, to potentially constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" when considered by the Eleventh Circuit in *Quintanilla*. 730 F. App'x at 743 (citing *Sandin*, 515 U.S. at 484 *and Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005)). Plaintiff also sufficiently alleges constitutionally inadequate process, because when his initial confinement decision was contemplated, he did not "receive some notice of the charges against him and an opportunity to present his views." *Hewitt*, 459 U.S. at 472 (officials "were obligated to engage only in an informal, non-adversary review of the information

---

"that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, to the extent it is alleged, any substantive due process claim Plaintiff may assert should not proceed beyond screening.

supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation.") (abrogated by *Sandin*, 515 U.S. 472); *but see Wilkinson*, 545 U.S. at 228–29 (*Hewitt* "remain[s] instructive for [its] discussion of the appropriate level of procedural safeguards.").

Viewing the facts in the light most favorable to Plaintiff, these allegations are enough, at this early stage, to progress beyond frivolity review. While the ultimate determination of the atypical and significant hardship inquiry is fact intensive, *Conner v. Allen*, 2020 WL 2104943, at *12 (S.D. Ga. May 1, 2020), Plaintiff has alleged facts that could plausibly state a due process claim. *See Quintanilla*, 730 F. App'x at 745 (citing *Hewitt*, 459 U.S. at 476); *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (holding that conditions of confinement can amount to an atypical and significant hardship when a prisoner alleges that he was in solitary confinement, locked in an extremely small, closet-sized space, with minimal contact with other human beings for a prolonged time exceeding 500 days.).

To be clear, though, the Court makes no determination at this early stage regarding whether the actual evidence will indicate that, as a matter of law, the conditions Plaintiff experienced in Tier II rise to the level necessary to constitute atypical or significant hardship. *Quintanilla v. Bryson*, No. 6:17-CV-4, 2020 WL 1441405, at *3 (S.D. Ga. Mar. 20, 2020) (on remand, finding that the conditions Plaintiff endured did not impose an atypical and significant hardship within the correctional complex; even though the conditions were more restrictive than those in general population, they did not create a protected liberty interest.). Even though it is unclear at this time whether the conditions of Tier II segregation were so severe in comparison to general population as to create a protected liberty interest, Plaintiff has plausibly alleged that Defendants Godfrey, Johnson, and Cardenas, as the three members of SSP's Tier II Program Classification Committee, unlawfully failed to provide him with due process upon his entry into Tier II and regarding his continued confinement there. *See Sandin*, 515 U.S. at 485.

ii.    *Procedural Due Process in Appeal: Defendants Doe and Nelson*

Plaintiff's next due process allegation concerns the lack of meaningful appeal afforded him once he became confined in Tier II and

16

the resultant indefinite nature of his continued confinement within Tier II. He alleges that Defendants Doe[5] and Nelson failed to respond to his assignment appeal, and thereby effectively upheld the violative assignment decision. Doc. 1 at 14. Moreover, while it is unclear whom he blames for this issue, Plaintiff appears to complain that prisoners are unable to graduate from Tier II because of procedural bars such as the failure to meaningfully review appeals.

While "administrative segregation may not be used as a pretext for indefinite confinement of an inmate," *Hewitt*, 459 U.S. at 477 n. 9, it is not clear whether the due process protections theoretically afforded to Plaintiff in his initial placement in Tier II should also be afforded to him in an appeal. However, at this stage of the case, Plaintiff's claims that due process protections should apply to his appeal, and moreover, that he has been deprived of those protections, must proceed, especially considering the possibility that an appeal may afford opportunity to correct the misapplication of due process or prevent indefinite and arbitrary confinement in Tier II without justification. *See, e.g., Bass v.*

---

[5] Plaintiff identifies Defendant Doe as the Director of Facilities Operations, a position which Plaintiff argues is synonymous with the position of "Regional Director."

*Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (holding that where plaintiffs were given a full appeal process after the decision to put them on a "yard suspension list" was made, no violation occurred even though written notice of the charge was not provided until after placement on the list.); *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012) (discussing requirements for "meaningful" review of administrative segregation); *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975) ("[W]here an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in a meaningful way and by relevant standards to determine whether he should be retained in segregation or returned to population."); *Mathews v. Eldridge*, 424 U.S. 319 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation marks omitted).  Plaintiff affirmatively states a claim against Defendant Nelson in this regard.  *See* doc. 1 at 7 ("Plaintiff nevertheless filed his appeal with defendant Nelson essentially pointing out that he did not meet the Tier II Program Policy's eligibility criteria . . .").  As to Defendant Doe, Plaintiff alleges that the Facilities Director or Designee "will complete the review of the offender's

appeal" under the policy, but that he never received a response to his appeal. Thus, for the purposes of screening, Plaintiff makes a due process claim against Defendants Doe as well. Defendants may respond to Plaintiff's arguments as provided by the Federal Rules of Civil Procedure, and are not foreclosed from challenging the sufficiency of his allegations pursuant to Rule 12(b)(6) by this screening.

## B. Eighth Amendment Claims

Typically, prisoner claims for violations of the Eighth Amendment take the form of allegations that the conditions of a prisoner's confinement alone constitute a "wanton and unnecessary infliction of pain." *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). However, Plaintiff attempts to assert a different basis for his Eighth Amendment claim: that Defendant Godfrey assigned him to Tier II based on past misconduct for which Plaintiff had already been punished, a decision which, in Plaintiff's opinion, constitutes gratuitous punishment inflicted without purpose in violation of the cruel and unusual Punishment Clause of the Eighth Amendment. Doc. 1 at 14. In other words, Plaintiff alleges that his transfer to more restrictive conditions without a "legitimate penological justification" amounts to an Eighth

Amendment violation irrespective of whether the Defendants were deliberately indifferent to an "unreasonable risk of serious damage to his future health or safety" while in there. *Chandler*, 379 F.3d at 1289.

The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger,* 833 F.2d 1420, 1428–29 (11th Cir. 1987); *see also Gholston v. Humphrey*, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); *Anthony v. Brown*, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit).

Instead, to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must first show that his conditions are objectively "serious," or "extreme." *Chandler*, 379 F.3d at 1289. "Conditions are objectively serious or extreme if they amount to a deprivation of the minimal civilized measure of life's necessities, or the basic human needs, including reasonably adequate food, clothing,

shelter, and sanitation." *Quintanilla*, 730 F. App'x at 746 (internal quotation marks and citation omitted); s*ee also Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981) (Whether conditions are cruel and unusual is judged under the "contemporary standards of decency."). A prisoner must secondly "show that the defendant prison officials subjectively acted with 'deliberate indifference' with regard to the conditions at issue." *Quintanilla*, 730 F. App'x at 746 (quoting *Chandler*, 379 F.3d at 1289); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Thus, while a plaintiff may state a due process claim by alleging that the conditions constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Hewitt*, 459 U.S. at 476, reliance on those same conditions does not necessarily state an Eighth Amendment violation. Specifically, Plaintiff here makes no allegation that risks of Tier II confinement were so obvious that the prison officials should be charged with actual knowledge. *Id.*; *c.f.*, *Quintanilla*, 730 F. App'x at 747 ("Quintanilla asserts that the risks were so obvious that the prison officials should be charged with actual knowledge . . .".). Moreover, these allegations appear redundant of

Plaintiff's due process claim, masquerading as an Eighth Amendment claim. The claim should be dismissed.

Plaintiff next argues that Godfrey, Johnson, and Cardenas refused to conduct to conduct a Tier II Program policy-mandated initial administrative segregation hearing which constituted deliberate indifference to Plaintiff's right to be free from the "the unnecessary and wanton infliction of pain." Doc. 1 at 15. This is again a disguised due process claim. As explained, the mere placement in Tier II alone is not an unnecessary and wanton infliction of pain. While the conditions experienced in Tier II may rise to a violative level constituting unnecessary and wanton infliction of pain for which state actors may be deliberately indifferent, the simple refusal to provide a hearing does not.[6] Accordingly, Plaintiff's Eighth Amendment claims against Defendants Godfrey, Johnson, and Cardenas should be **DISMISSED**..

---

[6] The Court recognizes that a plaintiff may state a claim when he alleges that isolation is indefinite and a concomitant deterioration in health and mental wellness. *See, e.g.*, *Sheley*, 833 F.2d at 1428 (holding that twelve years of "close management" solitary confinement without reliance on new evidence of need for segregation states a claim.); *see also Meriwether v. Faulkner*, 821 F.2d 408, 417 (7th Cir. 1987) (finding district court's sua sponte dismissal premature where inmate alleged prolonged confinement in isolation). Plaintiff here makes no specific allegation as to prolonged isolation and in fact alleges that he shares his cell. Plaintiff is free to make such argument in any objection he submits in response to this recommendation, but his pleadings thus far suggest no unlawfully prolonged isolation in the Eighth Amendment sense.

## C. Claim Against Adams

Plaintiff alleges that Adams is the Warden of Smith State Prison and is responsible for approving placements in the Tier II program after the classification committee decision is made. Doc. 1 at 11. In this way, Adams violated Plaintiff's constitutional rights by approving the classification committee's decision to wrongfully place and keep him in Tier II indefinitely. *Id.* at 11; 14. The Court therefore construes his claim against Adams as a claim that Adams personally participated in violating his constitutional rights. *See Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) ("Supervisory liability under § 1983 occurs when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.").

Although the precise operation of the decision-making process will require further factual development, the allegations in the Complaint present enough detail to state a plausible claim that Defendant Adams personally participated in the decision to continue Plaintiff's confinement in Tier II and failed to provide meaningful review of that decision. Such allegations are sufficient to "unlock the doors of discovery" and permit

further factual development of the claims. *See Ashcroft*, 556 U.S. at 678-79; *see also Gumm v. Chatman*, 2016 WL 8715665, at *13 (M.D. Ga. Jan. 22, 2016) (holding that where allegations claimed that warden had final approval of decision to place inmate in Special Management Unit, Plaintiff stated a claim against him of personal participation in due process violation.).

## D. Failure to Train and Supervise

Plaintiff next alleges that Defendant Ward, the "Commissioner of the State of Georgia Department of Corrections" is "legally responsible for the overall operation of the Department and each institution under its jurisdiction." Doc. 1 at 2. Plaintiff further alleges that Defendant Ward failed to "train and supervise subordinates in the implementation of the Tier II Program policy which constituted deliberate indifference to Plaintiff's due process rights" and proximately caused such violations. *Id.* at 13.

"As the Supreme Court has indicated, 'a supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1053 (11th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "[U]nder

24

[Section] 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [supervisors] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Therefore, an allegation of "a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes his or her employees to violate citizens' constitutional rights,'" and, despite that knowledge, "the supervisor chose to retain that training program." *Id.* at 1052 (quoting *Connick*, 563 U.S. at 61). "Actual or constructive notice" generally requires "a pattern of similar constitutional violations by untrained employees." *Id.* at 1053 (quoting *Connick*, 563 U.S. at 62). Plaintiff makes no argument as to actual or constructive notice of any deprivation of constitutional rights. His conclusory allegation that Defendant Ward "proximately caused" the violations is not enough to state a claim, and thus claims against Defendant Ward should be **DISMISSED.**

## E. Authorization of Unconstitutional Policy

Plaintiff's last claim alleges that Defendant Dozier, "the former commissioner of the GDC," authored the most recent revisions of the Tier II program policy and is therefore liable for its authorization. Doc. 1 at 2. Plaintiff argues that the "policy operates to deprive prisoners of their liberty and personal [sic]." Doc. 1 at 16. However, Plaintiff's argument against the authorization of policy fails.

First, Plaintiff's surviving due process allegation claims that the officials involved circumvented policy by depriving him of the procedural protections contemplated by the proper application of policy. *See* doc. 1 at 11 (describing that the policy requires a recommendation for placement which must be approved by the warden but arguing that no "recommendation" was made on his specific placement in Tier II.). In other words, except in this one conclusory claim, Plaintiff does not argue that the policy itself is unlawful, but rather that officials did not apply it. Accordingly, his allegation is inapposite. Second, although Plaintiff asserts in conclusory terms that a policy or custom resulted in deliberate indifference, no factual allegations yield that interpretation. As stated, Plaintiff has made no claim that any GDC official had actual or

constructive knowledge of due process deprivations. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents . . . or multiple reports of prior misconduct by a particular employee . . .." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 957 (11th Cir. 2019) (internal citations omitted). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several subordinates." *Id.* (quoting *Craig v. Floyd Cty.*, 643 F.3d 1306, 1312 (11th Cir. 2011)); accord *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (finding plaintiff failed to meet "'extremely rigorous' standard for supervisory liability" when plaintiff failed to show any other inmate exposed to policy or custom violating the Eighth Amendment). Accordingly, claims against Defendant Dozier should be **DISMISSED.**

### F. Preliminary Injunction

Finally, Plaintiff sought a preliminary injunction in his Complaint, although he did not immediately support this request with argument. *See* doc. 1 at 16-17. He later filed a "Brief in Support of Preliminary Injunction" several months after the relief was initially requested. *See* doc. 9. In his Brief, Plaintiff argued of his case the four required elements

27

for obtaining a preliminary injunction: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."   Doc. 9; *See Jones v. Governor of Fla.*, 950 F.3d 795, 806 (11th Cir. 2020) (quotation omitted).   Generally, if a plaintiff succeeds in making these showings, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." *Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982). However, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration, unless there is a clear abuse of discretion.  *See Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the

increasingly urgent problems of prison administration and reform."),
*overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).
In such cases, "[d]eference to prison authorities is especially
appropriate." *Newman*, 683 F.2d at 1320–21 (reversing district court's
injunction requiring release of prisoners on probation because it
"involved the court in the operation of the State's system of criminal
justice to a greater extent than necessary" and a less intrusive equitable
remedy was available).

Plaintiff has stated a claim, and therefore, a modicum of likely
success on the merits, as to his Fourteenth Amendment claims only.  As
to irreparable injury, Plaintiff argues that, as a matter of law, the
continuing deprivation of constitutional rights constitutes irreparable
harm.  Doc. 9 at 7.  Plaintiff has not made viable claims of physical or
mental harm existing in his Tier II cell which meet the Eighth
Amendment burden, and thus any irreparable harm he suffers is not tied
to his continued confinement there.  Thus, although he seeks release from
Tier II, the proper injunctive relief appropriate to Plaintiff may not be a
release from Tier II, but rather the provision of the due process which
should be afforded to him.  In other words, the relief Plaintiff seeks is

broader than necessary to remedy the constitutional violation alleged. Given the deference attributed to prison officials, and the early stage of the present litigation, the Court should **DENY** the preliminary injunction. This is not to say that Plaintiff will not eventually be able to obtain injunctive relief. Rather, the Court should not interfere at this time on the facts before it.

## CONCLUSION

For all the foregoing reasons, Plaintiff's due process allegations against Defendants Doe, Nelson, Adams, Godfrey, Johnson, and Cardenas should proceed beyond screening.

It is **RECOMMENDED** that Plaintiff's claims for Eighth Amendment violations and Plaintiff's claims against Defendants Ward and Dozier be **DISMISSED.** Finally, his request for preliminary injunction should be **DENIED.**[7] This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this

---

[7] The injunctive relief sought by Plaintiff is not filed as a separate motion and is thus not pending adjudication on the docket. However, as pro se Plaintiff's pleadings are liberally construed, the Court examined this request anyway and denies it. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Meanwhile, Plaintiff must pay fees for filing this case.  Plaintiff never returned his PLRA paperwork and thus the Court is unable to determine whether funds "exist" for the purposes of 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  He therefore owes a $0 initial partial filing fee.  However, Plaintiff's custodian (or designee) shall set aside 20

31

percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Since the Court approves for service Plaintiff's due process claims against Defendants Doe, Nelson, Adams, Godfrey, Johnson, and Cardenas, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order and Report and Recommendation shall be served upon Defendants Doe, Nelson, Adams, Godfrey, Johnson, and Cardenas by the United States Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff. The Court also provides the following instructions to the parties that will apply to the remainder of this action.

## <u>INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.5. A defendant has a duty to avoid unnecessary costs of serving the summons, and any

defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.  Defendants shall

present such questions to the witness in order and word-for-word during the deposition.  Fed. R. Civ. P. 30(c).  Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1.  Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from a

Defendant, Plaintiff must initiate discovery.  <u>See generally</u> Fed. R. Civ.
P. 26 to Fed. R. Civ. P. 37.  The discovery period in this case will expire
140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does
not need the permission of the Court to begin discovery, and Plaintiff
should begin discovery promptly and complete it within this time period.
<u>Id.</u>  Discovery materials should **not** be filed routinely with the Clerk of
Court; exceptions include: when the Court directs filing; when a party
needs such materials in connection with a motion or response, and then
only to the extent necessary; and when needed for use at trial.  Local R.
26.4.

Interrogatories are a practical method of discovery for incarcerated
persons.  <u>See</u> Fed. R. Civ. P. 33.  Interrogatories may be served only on a
**party** to the litigation, and, for the purposes of the instant case, this
means that interrogatories should not be directed to persons or
organizations who are **not named** as a defendant.  Interrogatories are
not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff
wishes to propound more than 25 interrogatories to a party, Plaintiff
must have permission of the Court.  If Plaintiff wishes to file a motion to
compel, pursuant to Federal Rule of Civil Procedure 37, he should first

contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.  Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question

which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.  A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.  Failure to respond shall indicate that there is no opposition to a motion.  Local R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's

motion.   Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be met by reliance on the conclusory allegations contained within the complaint.  If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.  If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's

affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED and REPORTED and RECOMMENDED,** this 9th day of January, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA